**ISLAND ENTERTAINMENT, INC., Island Entertainment Company, Tilman Fertitta, and Todd Fertitta, Appellants,**

v.

**Fernando J. CASTANEDA and Dolores P. Castaneda, Appellees.**

No. 01–93–00321–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 20, 1994.

Order Vacating Judgment on Rehearing April 7, 1994.

Steven L. Scheinthal, Houston, for appellants.

Norwood J. Ruiz, Elsie I. Schiro, Joseph P. Montalbano, Law Offices of Norwood J. Ruiz, Galveston, for appellees.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellants, Island Entertainment, Inc., Island Entertainment Company, Tilman J. Fertitta, and Todd Fertitta, appeal the trial court's award of sanctions for failure to pay amounts owed pursuant to a settlement agreement within a reasonable time. In two points of error, appellants assert their conduct was not sanctionable as a matter of law, and the trial court abused its discretion because the sanctions were not just or appropriate and did not bear a relationship to the harm caused by them.

The primary question before the court is whether the failure to promptly pay a written settlement agreement made after mediation should be punishable by sanctions. We think not.

### Factual and procedural background

Appellants were defendants in a multi-party wrongful death action brought by the parents of a young man killed in an automobile accident. The parties agreed to participate in mediation and on July 15, 1992, entered into a rule 11[1] settlement agreement. The total amount to be paid by all defendants was $105,000. Appellants' share of this amount was $10,000. The agreement required that appellants pay $5,000, and that Tilman Fertitta execute a promissory note for $5,000; appellants also had to pay one-fourth of the

appellees' court costs. The handwritten agreement did not contain a deadline for payment or for execution and delivery of the note.

On August 3, 1992, the plaintiffs' attorney, Norwood Ruiz, sent a letter to appellants' attorney, Steven Scheinthal. Ruiz indicated he had received settlement checks from all the defendants except appellants. He asked Scheinthal to send him a check and the promissory note, and stated:

If I do not receive the above referred within seven (7) days of your receipt of this letter, you can tell Mr. Fertitta that his refusal to comply with the settlement agreement voids our agreement, and that I plan to settle with all the other parties as per my agreement and proceed against all of the non-settling parties as soon as possible. I understand your position but please try to understand mine. If your client doesn't want to abide by our settlement agreement then we will just go from there.

On September 16, 1992, H. Mark Burck, an attorney representing one of the other defendants, also wrote to Scheinthal, asking him to comply with the settlement agreement. Burck's letter noted, "The remaining parties to this case are anxious to have the final settlement approved by the Court and have a final judgment entered to finally put this matter to rest."

On September 29, 1992, Ruiz filed a motion to enforce agreement and motion for sanctions. On November 9, Scheinthal sent Ruiz a check for $5,000, an executed promissory note, a check for the first three installments due on the note, a check for plaintiffs' court costs, and a release. He stated in his letter:

You are instructed to hold the settlement funds and Promissory Note in trust pending execution of the Release and return of same to my office and confirmation that you have passed the Motion to Enforce Mediation Agreement and Motion for Sanctions.

Ruiz did not pass the motion. The trial court held a sanctions hearing on November 10. Ruiz testified he had received checks from all the other defendants but could not

1. Tex.R.Civ.P. 11.

cash the checks "because it presents a lot of troubles if we start giving releases the way there's so many cross-claims and what have you." Scheinthal testified regarding the delay in payment. He stated that after the mediation, he left his law firm and was not able to get appellants' file until October; he also stated that the Fertittas misplaced their copy of the agreement. Todd Fertitta testified he did not have the financial resources to pay the amounts due until November 9.[2] Todd, who attended the mediation and signed the agreement on behalf of himself and his brother, equivocated when asked if he represented his brother at the mediation.

The trial court entered a final judgment on December 9 and directed disbursement of $100,000 to the plaintiffs.[3] The trial court further found that the appellants' failure "to pay the settlement proceeds pursuant to the Mediation Agreement to Plaintiffs within a reasonable time from the date the Mediation Agreement was signed was a breach of the Mediation agreement...." The court awarded plaintiffs: $2,250 for loss of interest on the settlement proceeds; $2,500 in attorney's fees; and $10,000 for mental anguish. The trial court also assessed sanctions of $15,000 against appellants and Scheinthal because:

> these parties failed to act in good faith and executed an agreement when they knew they would not abide by the agreement; had no authority to enter into the agreement; and did not have the financial ability to pay the amount they agreed to pay

under the terms of the Mediation Agreement. Good cause also exists for the imposition of sanctions since, by these parties' signatures on the Mediation Agreement, they certified to the Plaintiffs their acceptance of the settlement agreement and that they would comply therewith within a reasonable time when, in fact, these parties signed said agreement in bad faith and for the purpose of delay or to otherwise harass said plaintiffs.

The trial court entered a modified final judgment on February 19, 1993, in which it deleted the $10,000 sanction for mental anguish and excluded Scheinthal from the $15,000 sanction award.

### Was appellants' conduct sanctionable?

Appellants assert that a litigant cannot be sanctioned for not paying money owed pursuant to a settlement agreement. They argue that under rule 13 of the Texas Rules of Civil Procedure,[4] a trial court must find the document in question is groundless. Appellants assert the mediation agreement is not groundless because plaintiffs could have moved for entry of judgment on the basis of the agreement. Appellants also note that plaintiffs could have maintained their original cause of action against appellants. *See Rizk v. Millard,* 810 S.W.2d 318, 321 (Tex.App.— Houston [14th Dist.] 1991, orig. proceeding) (repudiation of an *unsigned* settlement agreement forged in mediation is not subject to discovery sanctions under TEX.R.CIV.P.

---

**2.** The settlement checks sent to Ruiz on November 9 were all signed by Tilman Fertitta and were drawn on the account of Landry's Restaurants.

**3.** The $5,000 promissory note was made payable to Ruiz and represented attorney's fees.

**4.** Rule 13 of the Texas Rules of Civil Procedure provides:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper, that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading

which they know to be groundless or false, for the purpose of securing a delay of the trial of the cause, shall be guilty of a contempt. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or on its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b, upon the person who signed it, a represented party, or both.

> Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law....

TEX.R.CIV.P. 13.

215; options available to party are either filing suit on the agreement or continuing with the original suit); *see also* TEX.CIV.PRAC. & REM.CODE ANN. § 154.071(a) (Vernon Supp. 1993) (if the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract).

Although plaintiffs argue that appellants' conduct constitutes a rule 13 violation, they concede that neither the rules of civil procedure nor the Civil Practice and Remedies Code specifically provides for sanctions in alternative dispute resolution situations. They argue, however, that trial courts must have a "mechanism to prevent abuse after a party to mediation has voluntarily chosen to participate in the mediation." Appellees rely on *Kutch v. Del Mar College,* 831 S.W.2d 506 (Tex.App.—Corpus Christi 1992, no writ). In *Kutch,* the trial court dismissed a lawsuit for failure to timely replead. *Id.* at 507. The court of appeals stated the sanction was not justified by either rule 13 or rule 215. The court held, however, that Texas courts have inherent power to sanction for bad faith conduct during litigation. *Id.* at 509. The court noted that the core functions of the judiciary are: hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment, and enforcing that judgment, and stated:

> Inherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts. Accordingly, for inherent power to apply, there must be some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of these powers.

*Id.* at 510. The court noted that further limitations on this power exist, and added, "The amorphous nature of this power, and its potency, demands sparing use. The best practice is to rely upon the rules and statutes expressly authorizing sanctions whenever possible." *Id.*

This Court adopted the reasoning of *Kutch* in *Lawrence v. Kohl,* 853 S.W.2d 697 (Tex. App.—Houston [1st Dist.] 1993, no writ). In *Lawrence,* the trial court sanctioned an attorney for refusing to help rectify an erroneous order. *Id.* at 699. We held that the trial court, acting under its "inherent power to administer," did not abuse its discretion in sanctioning the attorney. *Id.* at 700–01.

█ Although Texas courts have the inherent power to sanction for an abuse of the judicial process that may not be covered by any specific rule or statute, the trial judge did not act within his power when he sanctioned appellants. There is no evidence that appellants mediated in bad faith, and the rule 11 agreement gave appellees rights that they would not have had absent the agreement. A breach of a settlement contract after mediation is no different than a breach of a settlement agreement without mediation. Mediation is a creative method for dispute resolution and is not another forum to obtain sanctions. Appellants' conduct, although not laudatory, was at worst a breach of an implied contract term concerning reasonably prompt payment.

Appellees chose to enforce the rule 11 agreement, an action that became moot when appellants sent full payment. The contract had no specific date for performance, and the August 3, 1992, letter from the plaintiffs' attorney even stated there would be no agreement after August 10, 1992. A breach of contract has never been a ground for judicial sanctions, and it is not one now. We sustain appellants' first point of error.

Our disposition of point one makes it unnecessary for us to address point of error two.

In a cross-point, appellees assert the trial court's award must be upheld because appellants did not request, and the trial court did not file, findings of fact and conclusions of law. They assert that all questions of fact should therefore be presumed found in support of the judgment and that the judgment must be affirmed if it could be upheld on any basis. *Point Lookout West, Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex.1988). Appellees assert the award of sanctions can be supported on the theories of fraud, violation of rule 13, or abuse of judicial process.. We

**6**

reiterate there is no evidence justifying sanctions in this case. We overrule appellees' cross-point.

We reform the judgment of the trial court to delete the total sanctions award, and affirm the judgment as reformed.

### OPINION ON MOTION FOR REHEARING

Appellants have filed a motion for rehearing, in which they ask this Court to clarify whether the "total sanctions award" we are deleting from the trial court's judgment includes the award of attorney's fees and interest for loss of use. We overrule appellants' motion, but clarify that the "total sanctions award" includes the $15,000 sanction award, the $2,250 award for loss of interest on the settlement proceeds, and the $2,500 award of attorney's fees. This Court's judgment of January 20, 1994, is hereby vacated, set aside and annulled, and we substitute a corrected judgment in its stead to reflect this clarification.